QUINN EMANUEL URQUHART & SULLIVAN, LLP
MICHAEL E. WILLIAMS (Bar No. 181299)
michaelwilliams@quinnemanuel.com
JOHN W. BAUMANN (Bar No. 288881)
jackbaumann@quinnemanuel.com
SEAN TAHERI (Bar No. 293912)
seantaheri@quinnemanuel.com
YANAI BEN-GIGI (Bar No. 352235)
yanaibengigi@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendant Regus Management Group, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DIANA SCHEER, THELMA VALDEZ, and TYLER TOLER, individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>REGUS MANAGEMENT GROUP, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No. 3:26-cv-8621<br><br>**DEFENDANT REGUS MANAGEMENT GROUP, LLC'S NOTICE OF REMOVAL**<br><br>28 U.S.C. §§ 1332, 1441, 1446, 1453<br><br>Sonoma County Superior Court<br><br>State Case No. 26CV03024<br><br>Complaint Filed: April 28, 2026 |

TO THE CLERK OF THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that Defendant Regus Management Group, LLC ("Regus") hereby removes *Diana Scheer, et al. v. Regus Management Group, LLC, et al.*, Case No. 26CV03024, Sonoma County Superior Court (the "State Court Action"), to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. Regus removes this case pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The putative class includes more than 100 class members; minimal diversity exists between the class and Regus; and the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)–(6).

## INTRADISTRICT ASSIGNMENT

2. Removal to the Northern District of California is proper because Sonoma County is embraced within this District. 28 U.S.C. §§ 84(a), 1441(a), 1446(a).

3. Pursuant to Civil L.R. 3-2(c) and (d), this action is properly assigned to the San Francisco Division because a substantial part of the events giving rise to the action are alleged to have occurred in Sonoma County.

## BACKGROUND

4. Plaintiffs filed this case on April 28, 2026. Diana Scheer, Thelma Valdez, and Tyler Toler, individually and on behalf of all others similarly situated, filed the Complaint against Regus and Does 1 through 100 in Sonoma County Superior Court. (Ex. 1, Compl. at 24.)

5. Regus was served with the Summons and Complaint in the State Court Action on July 22, 2026. Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint in the State Court Action (the "Complaint" or "Compl.") is attached to this Notice as **Exhibit 1**. A copy of all other process, pleadings, and orders served upon or filed in

the State Court Action is attached as **Exhibit 2**, consisting of the Civil Case Cover Sheet, the Summons, the Notice of Assignment, Case Management Conference, and Order to Show Cause, and the Proof of Service of Summons.

6. Removal is therefore timely. Section 1446(b)(1) requires a notice of removal to be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." The 30-day period runs from formal service, as it commences only when a "defendant has received the complaint *and* has been formally served." *Mayes v. Am. Hallmark Ins. Co. of Texas*, 114 F.4th 1077, 1078–79 (9th Cir. 2024) (emphasis in original). Regus was formally served on July 22, 2026, and files this Notice of Removal within 30 days of that date.

7. Regus will, upon filing this Notice of Removal, give notice of the removal to Plaintiffs and the Superior Court as required by 28 U.S.C. § 1446(d).

## GROUNDS FOR REMOVAL

## I. ALL FOUR CAFA REMOVAL REQUIREMENTS ARE SATISFIED

8. CAFA removal requires (a) "a putative class action," (b) "with more than 100 class members," (c) "minimal diversity," and (d) an amount in controversy exceeding "$5,000,000, exclusive of interest and costs." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1226 (9th Cir. 2019). All elements are met here.

### A. The State Court Action Is a "Class Action"

9. This is a class action. Plaintiffs title their Complaint a "Class Action Complaint" and expressly sue under California's class action statute, Code of Civil Procedure section 382. (Ex. 1, Compl. ¶ 28.)

### B. The Putative Class Has More than 1,000 Members

10. The putative class exceeds 100 members. Plaintiffs seek to represent "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiffs' complaint up until the time that notice of the class action is provided to the class"—that is, April 28, 2022 through, at least, April 28, 2026. (*Id.*)

11. According to Regus's records, as of March 3, 2026, there are approximately 1,006 persons who worked for Regus in California as an hourly-paid or non-exempt employee since April 28, 2022, across approximately 34,051 pay periods.

### C. <u>Minimal Diversity Exists</u>

12. The named Plaintiffs are California citizens and Regus is a citizen of Delaware and Texas. CAFA's minimal diversity requirement is met if "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Emps. at Clark Cnty. Gov't Ctr. v. Monsanto Co.*, 163 F.4th 602, 605 (9th Cir. 2025). Courts accept "allegations of diversity of citizenship as true," save if they are "factually attacked." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 610, 614 (9th Cir. 2016). Plaintiffs each allege they are "a resident of the State of California" and that Defendants employed them in California performing California-based duties. (Ex. 1, Compl. ¶¶ 2–4.) It is "a longstanding principle" that "'the place where a person lives" is presumed their place of citizenship "until facts adduced establish the contrary.'" *NewGen, LLC*, 840 F.3d at 614.

13. Regus is a citizen of Delaware and Texas. "[A]n LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Regus's sole member is Regus Corporation, a Delaware corporation with its principal place of business in Texas. Regus is therefore a citizen of Delaware and Texas.

14. Because Plaintiffs are California citizens and Regus is a citizen of Delaware and Texas, the minimal diversity required by CAFA is satisfied. 28 U.S.C. § 1332(d)(2)(A).

### D. **<u>The Amount in Controversy Exceeds $5,000,000</u>**

15. The aggregate amount in controversy exceeds $5,000,000, as required by 28 U.S.C. § 1332(d)(6).[1]

16. Plaintiffs seek compensatory damages for unpaid wages, unreimbursed expenses, prejudgment interest, liquidated damages, restitution, penalties, vested vacation pay, and attorneys' fees and costs. (Ex. 1, Compl. at Prayer for Relief, pp. 23–24.) Plaintiffs do not specify the amount they seek.

17. A plausible allegation as to the amount in controversy is all that is required for removal. "When a CAFA defendant removes a class action to federal court, its notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (citation omitted). Regus "is permitted to rely on a chain of reasoning" and reasonable "assumptions" founded on the Complaint, rather than evidence. *Id.* (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019)). In wage-and-hour cases in particular, "it makes little sense to require" evidence of the "violation rate" when the defendant maintains that "the real rate is zero and thus that the evidence does not exist." *Id.* at 809. The Court's "task is simply to determine if the defendant's reasoning and underlying assumptions are reasonable." *Id.* at 808. Regus has nonetheless gone further. It has reviewed its employment and payroll records, and the figures below are early-stage approximations giving Plaintiffs' allegations their fullest plausible reading.

---

[1] Regus does not admit liability and expressly denies it. The amount in controversy "does not mean likely or probable liability; rather, it refers to possible liability." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."). Regus's analysis is made solely to demonstrate what the Complaint places in controversy, and is subject to Regus's reservation of rights. *See infra*, Section II.

18. "[I]n most wage and hour class actions, CAFA amount-in-controversy estimates are premised on three variables: (1) the total number of possible violations; (2) the frequency at which violations might have occurred; and (3) the potential cost associated with each hypothetical violation." *Salatino v. Am. Airlines, Inc.*, 719 F. Supp. 3d 1094, 1100 (S.D. Cal. 2024); *see also Amezcua v. CRST Expedited Inc.*, 653 F. Supp. 3d 712, 720 (N.D. Cal. 2023). Future attorneys' fees recoverable by statute are also included. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018).[2]

*1. Plaintiffs' Minimum and Straight Time Wage Claim Places Approximately $1,463,400 in Controversy*

19. Plaintiffs allege Regus failed to pay minimum wages for the full four-year period, including by requiring off-the-clock pre- and post-shift work, clocking out during meal periods while continuing to work, after-hours calls and emails, off-the-clock driving, failure to include all remuneration in the regular rate, and adverse rounding. (Ex. 1, Compl. ¶¶ 14–15, 45–48.) Plaintiffs attribute these practices to a "practice and/or policy" of failing to record time. (*Id.* ¶ 14.)

20. A 20% violation rate is a reasonable reading of the Complaint. Plaintiffs broadly allege violations occurred "four (4) years prior to the filing of the complaint," but offer no further detail as to their frequency or scope. (*Id.* ¶ 48.) In *Perez*, the Ninth Circuit addressed materially identical allegations—that Labor Code violations occurred "at times" and "throughout the statutory period." 131 F.4th at 808–10.

[2] Regus has calculated Plaintiffs' wage-based claims using only the three-year limitations period applicable to Labor Code claims (April 28, 2023 to present), rather than the four-year period applicable to Plaintiffs' UCL claims. *See Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965, 967 (C.D. Cal. 2006); Cal. Code Civ. Proc. § 338(a). Penalty-based claims were calculated using the one-year limitations period applicable to penalties. *Thomas v. Home Depot USA, Inc.*, 527 F. Supp. 2d 1003, 1006–07 (N.D. Cal. 2007); Cal. Code Civ. Proc. § 340(a). Were the four-year period applied uniformly, the amount in controversy on these claims, and in the aggregate, would be greater.

When a plaintiff pleads their suit vaguely, the complaint is reasonably subject to a range of assumptions. *Id.* If a plaintiff wished to "constrain the range of assumptions that [the defendant] could reasonably adopt," that plaintiff "was also free to use some more specific phrase" in drafting the complaint. *Id.*

21. The Complaint here is no "more specific," and courts applying *Perez* have taken the range-of-assumptions approach to similarly open-ended "policy and practice" and frequency allegations. *See Agdeppa v. C & J Clark Retail, Inc.*, 2026 WL 874686, at *7 (N.D. Cal. Mar. 30, 2026) (applying *Perez* to an "often" allegation to permit an assumed violation rate); *Nisbet v. S. Tire Mart, LLC*, 2025 WL 1135091, at *3–4 (N.D. Cal. Apr. 16, 2025) (applying *Perez* to "consistently" and "often" to sustain assumed rate); *Phillips v. Pac. Mar. Ass'n*, 2025 WL 1703971, at *3 (N.D. Cal. June 18, 2025) (applying *Perez* to a "from time to time" allegation); *Langwell v. Floor & Decor Outlets of Am., Inc.*, 2026 WL 1747776, at *3–4 (S.D. Cal. June 17, 2026) (applying *Perez* where the complaint gave "no specific estimate of the frequency or duration of these violations").[3]

22. Courts since *Perez* have consistently approved comparable rates. *See Thornhill v. McLane Foodservice, Inc.*, 816 F. Supp. 3d 1006, 1014 (N.D. Cal. 2026) ("[A]ssumption of a 20% violation rate" reasonable); *Jennings v. Northrop Grumman Corp.*, 2025 WL 1940576, at *4 (C.D. Cal. July 14, 2025) (25% rate reasonable); *Martin v. United Rentals (N. Am.), Inc.*, 2025 WL 1554333, at *3 (N.D. Cal. June 2, 2025) ("[A]ssumption of three violations per workweek is reasonable").

23. California's minimum wage was $15 in 2022, $15.50 in 2023, $16 in 2024, $16.50 in 2025, and $16.90 in 2026, with local standards higher throughout.

---

[3] Indeed, some courts have gone further, reading "regularly"-type allegations the Complaint advances elsewhere, (Ex. 1, Compl. ¶¶ 17–19), to support a near-total violation rate. *See Alarcon v. Target Corp.*, 2025 WL 2155371, at *4–6 (C.D. Cal. July 28, 2025) (holding that a "regularly" allegation, pleaded as a "pattern and practice," was *less* open-ended than the "at times" allegation in *Perez* and supported the defendant's "use of a 100% violation rate").

Regus pays biweekly—every ten work days—so a 20% violation rate equates to two days per pay period. Using the floor figure of $15 across the entire period in dispute, twice per pay period for about 1,006 employees who worked approximately 24,390 pay periods since April 28, 2023, the minimum wage amount in controversy is approximately **$731,700**.[4] Plaintiffs also seek liquidated damages in an amount equal to any unpaid wages (Ex. 1, Compl. ¶ 50, Prayer for Relief (D)), which, using the same employment data and the minimum wage of $15, calculates to the same amount of **$731,700**.[5]

24. Together with the unliquidated damages, Plaintiffs allege an amount in controversy of approximately **$1,463,400** stemming from allegedly unpaid minimum wages.

*2. Plaintiffs' Overtime Wage Claim Places Approximately $1,112,389 in Controversy*

25. Plaintiffs allege that, "[f]our (4) years prior to the filing of the complaint in this action through the present," Regus failed to pay overtime wages for hours worked in excess of eight (8) per day, forty (40) per week, or seven (7) consecutive workdays, including based on the same off-the-clock practices and the alleged exclusion of remuneration (including gift cards) from the regular rate. (Ex. 1, Compl. ¶¶ 42–43.)

26. Regus pays biweekly, so a 20% violation rate equates to two alleged violations per pay period. Of the putative class, approximately 617 employees regularly or sometimes worked overtime, and Regus's records reflect overtime in approximately 15,012 pay periods worked by those employees during the three-year

---

[4] This figure multiplies 24,390 (the number of pay periods) by 2 (the assumed number of violations per period at a 20% violation rate) by $15 (the conservative minimum wage figure used): 24,390 × 2 × $15 = $731,700.

[5] As above, the figure multiplies 24,390 (the number of pay periods) by 2 (the assumed number of violations per period at a 20% violation rate) by $15 (the conservative minimum wage figure used).

period, at an average rate of approximately $24.70 per hour. Applying two unpaid overtime hours per pay period at the one-and-one-half-times rate, Plaintiffs allege an amount in controversy of approximately **$1,112,389**.[6]

*3. Plaintiffs' Meal and Rest Period Claims Place Approximately $1,143,891 in Controversy*

27. Plaintiffs allege that, "[f]or four (4) years prior to the filing of the complaint in this action through the present," Regus failed to provide meal and rest periods, including by requiring class members to forgo or interrupt breaks to assist clients, provide center tours, travel between centers, and complete additional work. (Ex. 1, Compl. ¶¶ 17–19, 51–66.) Plaintiffs allege that Defendants did so "often" and "regularly." (*Id.* ¶¶ 14, 17, 19.)

28. A 20% violation rate, one meal period and one rest break per two-week period, is a reasonable reading of allegations that violations occurred "often" and "regularly." Courts applying similar language have approved comparable or higher rates. *See Collins v. Hilton Mgmt. LLC*, 2021 WL 2981977, at *2 (N.D. Cal. July 15, 2021) ("[O]ne meal or rest period violation per week" reasonable where alleged violations occurred "often" and "regularly"); *Figueroa v. Multi-Color Corp.*, 2024 WL 3101013, at *4 (N.D. Cal. June 24, 2024) ("20% of…meal periods and 20% of…rest periods" reasonable where complaint alleged employees "'were regularly denied'…compliant meal period[s]"); *Nisbet*, 2025 WL 1135091, at *3–4 (20% violation rate reasonable "given plaintiffs' allegations of a 'consistent policy' that led class members to 'often' experience meal and rest period violations").

29. Under Labor Code section 226.7, the premium is "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or

---

6 This figure multiplies 15,012 (the approx. overtime pay periods), by 2 (the assumed number of violations per pay period), by 1.5 (the statutory overtime multiplier), and by $24.70 (the average hourly rate): 15,012 × 2 × 1.5 × $24.70 = $1,112,389.20.

rest or recovery period is not provided." Cal. Lab. Code § 226.7(c). Based on approximately 24,390 pay periods during the three-year period, at an average rate of about $23.45, the meal-and-rest amount in controversy is approximately **$1,143,891**,[7] without costs or interest.[8]

4. *Plaintiffs' Waiting Time Penalty Claim Places Approximately $274,712 in Controversy*

30. Plaintiffs allege Regus failed to timely pay final wages to departing employees, including unpaid overtime, minimum wages, premium wages, and vested vacation. (Ex. 1, Compl. ¶¶ 20, 67–74.) Under Labor Code section 203(a), unpaid final wages "continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," up to thirty days.[9] (Ex. 1, Compl. Prayer (G).)

---

[7] This figure multiplies 24,390 (the approx. number of pay periods), by 2 (the assumed number of violations), and by $23.45 (the class's estimated average hourly wage): 24,390 × 2 × $23.45 = $1,143,891.

[8] The estimates above are reasonable and conservative, as a cross-check against a related action confirms. In *Jara v. Regus Mgmt. Grp., LLC*, No. 3:24-cv-02206-RFL (N.D. Cal.)—a class action brought by the same counsel as here—the court denied remand, finding that the plaintiff's meal-and-rest allegations "alone put more than $9 million in controversy." Order Denying Mot. to Remand at 2, *Jara* (N.D. Cal. July 3, 2024), Dkt. No. 41. That figure rested on Regus's own personnel data, allegations materially similar to those pressed here, and a 100% violation rate the *Jara* complaint advanced. Applying those same figures to this action's class period, the meal-and-rest claims alone approach the threshold. *Jara* involved roughly 41,432 pay periods from December 7, 2019 to April 7, 2024. Limited to portions overlapping with this action's period (April 28, 2022 forward), about 18,640 remain. At the $23.14 hourly rate and one violation per ten-workday pay period credited in *Jara*, those pay periods yield $4.3 million (18,640 × $23.14 × 10). That even a *single category* of claims in a materially-identical parallel action nearly clears the bar confirms the estimates above are reasonable.

[9] Suits under Labor Code 203(a), while penalties, are subject to the 3-year statute of limitations. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010).

31. A 20% violation rate is a reasonable reading of the Complaint, for the same reasons shown above. The average hourly rate for the approximately 274 former employees who departed from Regus during the three-year period applicable to the claims was approximately $22.28. Assuming a standard 7.5-hour workday, and a 20% violation rate, the waiting-time amount in controversy is approximately **$274,712**.[10]

5. *Plaintiffs' Wage Statement Claim Places Approximately $170,630 in Controversy*

32. Plaintiffs allege Regus failed to provide accurate, itemized wage statements during the one-year period before filing, in violation of Labor Code section 226(a). (Ex. 1, Compl. ¶¶ 78–81.) The statutory penalty is $50 for the first violation and $100 for each subsequent pay period, up to $4,000 per employee. Cal. Lab. Code § 226(e).

33. During the one-year limitations period (April 28, 2025 to the date of the Complaint), approximately 513 members of the putative class were employed and received approximately 8,788 wage statements, one per pay period. The maximum exposure is therefore $50 for each of the 513 employees' first statements ($25,650), plus $100 for the remaining approximately 8,275 statements ($827,500), for a total of approximately $853,150— which, reduced to an assumed 20% violation rate, yields approximately **$170,630**.[11]

---

[10] This figure multiplies 274 (the number of former employees), by 30 (the maximum number of penalty days under Labor Code section 203), by 7.5 (hours per workday), and by $22.28 (the average hourly rate) by 0.20 (the assumed 20% violation rate): 274 × 30 × 7.5 × $22.28 × 0.20 = $274,712.

[11] Regus disputes that any violation occurred, and that the enhanced $100 penalty would attach even if one did. Section 226(e) confines the higher penalty to a "knowing and intentional" "subsequent violation"—conduct in which Regus never engaged, having acted lawfully throughout. For removal purposes, however, Regus assumes the truth of Plaintiffs' allegation that the violations were "knowing,

*6. Plaintiffs' Untimely Wages Claim Places Approximately $1,069,460 in Controversy*

34. Plaintiffs allege Regus failed to pay wages on time during the one-year period before filing, in violation of Labor Code section 204. (Ex. 1, Compl. ¶¶ 85–88.) The penalty structure under section 210 is twofold: a flat $100 per failure for an initial violation, and, for each subsequent, willful, or intentional violation, $200 per failure plus 25% of the wages unlawfully withheld. Cal. Lab. Code § 210(a).[12]

35. Applied across approximately 513 employees, that yields $100 for each employee's first affected pay period ($51,300), plus $200 for each of the remaining approximately 8,275 pay periods during the one-year limitations period ($1,655,000), totaling approximately $1,706,300 in flat penalties alone.

36. The 25% component adds considerably more. Each biweekly pay period spans ten workdays; assuming a standard 7.5-hour workday, that is 75 hours of pay per period. At the class's average hourly rate of $23.45, each pay period carries approximately $1,759 in wages; 25% of that sum is approximately $440 per period. Across the approximately 8,275 subsequent pay periods, that component contributes approximately $3,641,000. The two components together reach approximately $5,347,300, which, discounted to an assumed 20% violation rate, places approximately **$1,069,460** in controversy.

---

intentional, and willful" (Compl. ¶ 79), while reserving every defense to the penalties' applicability and calculation.

[12] Regus again disputes that any violation occurred, and that the second-tier penalty would attach even if one did. For removal purposes, however, Regus affords Plaintiffs' allegation that its "policies and practices" (Compl. ¶ 87) resulted in untimely payments the most expansive interpretation it plausibly allows, reserving every defense to the penalties' applicability and calculation.

7. *Plaintiffs' Expense Reimbursement Claim Places Approximately $97,560 in Controversy*

37. Plaintiffs allege Regus failed to reimburse mileage, gas, and cell phone costs for the three-year period before filing. (Ex. 1, Compl. ¶¶ 23, 93.)

38. The Court should again assume Plaintiffs allege a 20% violation rate. Plaintiffs provide no allegations of fact to describe any specific expenditure by Plaintiffs or any putative class member, let alone one for which they were entitled to and did not receive reimbursement. However, other courts, even when considering *only* cell phone expenses, have found reimbursable amounts ranging from $30 per month to 80% of the employee's full monthly cell phone bill. *Biag v. King George–J&J Worldwide Servs. LLC*, 2020 WL 4201192, at *6 (S.D. Cal. July 22, 2020); *Tehrani v. Macy's W. Stores, Inc*., 2016 WL 1559085, at *8 (C.D. Cal. Apr. 18, 2016).

39. Even assuming Plaintiff alleges only $20 in unreimbursed expenses per pay period (a figure that would encompass *all* alleged expense categories, not just cell phone usage)—a 20% violation rate applied across the approximately 24,390 pay periods worked since April 28, 2023 yields an amount in controversy of **$97,560**.

8. *Plaintiffs' Vested Vacation Claim Places Approximately $122,094 in Controversy*

40. Plaintiffs allege Regus failed to pay vested vacation at the final rate of pay upon separation. (Ex. 1, Compl. ¶¶ 105–107.) The Complaint asserts this was a "uniform" and "consistent" policy. (*Id.* ¶¶ 105–06.) Under the Labor Code, upon separation, an employer must pay as wages all vested, unused vacation. Cal. Lab. Code § 227.3. Regus's own timekeeping records confirm a paid-time-off benefit in regular use: approximately 496 class members took recorded paid time off during the period, totaling more than 67,000 hours. Against that backdrop, assuming a conservative 20 hours of unused, vested vacation per departed employee (well below what an employee typically accrues in a single year) for each of the approximately 274 employees who departed Regus during the applicable three-year period, the total

unused vacation hours at issue is about 5,480. At an average final rate of approximately $22.28 per hour, the vested-vacation amount in controversy is approximately **$122,094**.

9. *Plaintiffs' Records-Production Claim Places Approximately $37,725 in Controversy*

41. Plaintiffs allege that Regus failed to produce employment, payroll, and personnel records in response to Plaintiff Scheer's May 14, 2025 written request, and seek $750 in penalties per Labor Code sections 226(f) and 1198.5(k). (Ex. 1, Compl. ¶¶ 100–102.) Plaintiffs also allege that this failure "was consistent with Defendants' policy and practice that applied to Plaintiff and Class Members," (*id.* ¶ 101), thereby placing class-wide penalties at issue. Conservatively assuming 5% of about 1,006 putative class members sought and were denied their records, the records-production amount in controversy is approximately **$37,725**.

10. *Plaintiffs' Attorneys' Fees Add Nearly $1,372,966 Under the 25% Benchmark*

42. Plaintiffs seek attorneys' fees on multiple causes of action. (Ex. 1, Compl. at Prayer for Relief.) This Court applies a 25% benchmark for fees when calculating the amount in controversy under CAFA. *Fuller v. Bloom Inst. of Tech.*, 2023 WL 7550043, at *7 (N.D. Cal. Nov. 13, 2023). Twenty-five percent of the foregoing **$5,491,861** subtotal is approximately **$1,372,966**. Accordingly, even on the conservative three-year basis set forth above, the amount in controversy totals approximately **$6,864,827**—exclusive of interest and well in excess of $5,000,000—and would be substantially greater under the four-year period Plaintiffs allege. The threshold is satisfied even setting Plaintiffs' Labor Code section 204/210 untimely-wage claim aside entirely: the remaining claims place approximately $4,422,401 in controversy, which with a 25% fee award exceeds $5,528,000—still well above the jurisdictional minimum.

11. *The Complaint Places Roughly $6,864,827 in Controversy*

43. Below is a summary of Plaintiffs' alleged amount in controversy discussed in more detail above.

| Claim | Amount |
|---|---|
| Minimum Wage | $731,700 |
| Minimum Wage — Liquidated Damages | $731,700 |
| Overtime Wage | $1,112,389 |
| Meal & Rest Period | $1,143,891 |
| Waiting Time | $274,712 |
| Wage Statement | $170,630 |
| Untimely Wages (§ 204/210) | $1,069,460 |
| Reimbursement | $97,560 |
| Vested Vacation (§ 227.3) | $122,094 |
| Records Production (§§ 226(f), 1198.5) | $37,725 |
| **SUBTOTAL** | **$5,491,861** |
| 25% Fees | $1,372,966 |
| **TOTAL** | **$6,864,827** |

**E. No CAFA Exception Applies**

44. The exceptions to removal under 28 U.S.C. § 1332(d) and the home-state and local-controversy exceptions of 28 U.S.C. § 1332(d)(4) do not apply here. Those exceptions require a California citizen defendant, and Regus is not one. The local-controversy exception demands "at least 1 defendant...who is a citizen of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc). The home-state exception requires "the primary defendants" to be "citizens of the State in which the action was originally filed." *Id.* § 1332(d)(4)(B). Here, there is only one named defendant (and thus necessarily the primary defendant)—Regus—who is a citizen of Delaware and Texas. *See* Section I.C, *supra*.

45. The local-controversy exception fails for an additional, independent reason. Within the three years preceding this action, other class actions "asserting the

same or similar factual allegations" against Regus were filed by the same counsel who represents Plaintiffs here. 28 U.S.C. § 1332(d)(4)(A)(ii). On December 7, 2023, Sara Jara and a putative class sued Regus for wage-and-hour violations, seeking unpaid minimum wages, overtime, meal and rest period premiums, waiting time penalties, wage statement penalties, expense reimbursement, and unfair competition. *Jara v. Regus Mgmt. Grp., LLC*, No. 3:24-cv-02206-RFL (N.D. Cal.). This Court denied remand in *Jara*, holding that the plaintiff's allegations placed well over $5 million in controversy and that a prior class-action settlement bore on the merits rather than the amount in controversy. Order Denying Mot. to Remand at 2 & n.2, *Jara*, No. 3:24-cv-02206-RFL (N.D. Cal. July 3, 2024), Dkt. No. 41.

46. These are not two similar complaints so much as one complaint filed twice from a single template, down to the misspelled words. *Compare* Ex. 1, Compl. ¶ 25, *with Jara* Compl. ¶ 23 (both misspelling California's "Healthy Workplace Healthy Families Act" in the identical way, as the "Healthy Workplace Heathy Families Act"). The numerosity recital ("over seventy-five (75) Class Members") and the lettered (a)-through-(p) statement of common questions likewise appear verbatim in both. (*Compare* Ex. 1, Compl. ¶¶ 31–33 *with Jara* Compl. ¶¶ 29–31.) Each complaint also demands penalties under Labor Code section 558.1—which imposes liability only on a natural person who is an "owner, director, officer, or managing agent" of the employer, Cal. Lab. Code § 558.1(b)—in items C through G and J of the Prayer for Relief, even though Plaintiffs name no individual defendant. (Ex. 1, Compl. Prayer (C)–(G), (J).) That demand is a vestige of *Jara*, where the plaintiff pursued section 558.1 liability against an individual, Bonnie Fisher. These actions are about as similar as two complaints can be.

47. Furthermore, on July 9, 2025, Jennifer Sanford and a putative class filed materially the same complaint in the Central District of California. *Sanford v. Regus Mgmt. Grp., LLC*, No. 2:25-cv-07892 (C.D. Cal.).

## II. NON-WAIVER OF DEFENSES

48. By this Notice, Regus does not waive any defenses available to it and does not admit any of the allegations in the Complaint. Regus expressly reserves all rights, arguments, and defenses, including but not limited to: (1) the right to challenge personal jurisdiction; (2) the right to seek dismissal, summary judgment, or other dispositive relief on any or all claims; (3) all substantive defenses to liability; and (4) all challenges to damages and the class. Nothing in this Notice of Removal should be construed as an admission of any factual allegation or legal conclusion set forth in the Complaint. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (to determine removability under CAFA, a district court must examine the case "as of the time it was filed in state court").

## CONCLUSION

For the foregoing reasons, Regus hereby removes this case to the United States District Court for the Northern District of California.

DATED: August 19, 2026

By *\/s/ John W. Baumann*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
John W. Baumann

*Attorney for Defendant Regus Management Group, LLC*

# PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017-2543.

On August 19, 2026, I served true copies of the following document(s) described as:

**DEFENDANT REGUS MANAGEMENT GROUP, LLC'S NOTICE OF REMOVAL;**

**EXHIBIT 1 TO THE NOTICE OF REMOVAL;** and

**EXHIBIT 2 TO THE NOTICE OF REMOVAL**

on the interested parties in this action as follows:

BIBIYAN LAW GROUP, P.C.
Sarah Cohen
sarah@tomorrowlaw.com
Lizette Rodriguez
lizette@tomorrowlaw.com
1460 Westwood Boulevard
Los Angeles, CA 90024
Telephone: (310) 438-5555
Facsimile: (310) 300-1705

*Attorneys for Plaintiffs Diana Scheer, Thelma Valdez, and Tyler Toler, and on behalf of all others similarlv situated*

**BY MAIL OR ELECTRONIC TRANSMISSION**: By electronic mail transmission from yanaibengigi@quinnemanuel.com, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address(es) listed above. The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 19, 2026, at Los Angeles, California.

By *__/s/ Yanai Ben-Gigi__*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yanai Ben-Gigi

*Attorney for Defendant Regus Management Group, LLC*